Richard D. McCune (State Bar No. 132124)
RDM@mccunewright.com
**MCCUNE WRIGHT AREVALO, LLP**
18565 Jamboree Road, Suite 550
Irvine, California 92612
Telephone: (909) 557-1250

Derek Y. Brandt (*Pro Hac Vice*)
DYB@mccunewright.com
Leigh M. Perica (*Pro Hac Vice*)
LMP@mccunewright.com
Connor P. Lemire (*Pro Hac Vice*)
CPL@mccunewright.com
**MCCUNE WRIGHT AREVALO, LLP**
231 North Main Street, Suite 20
Edwardsville, IL 62025
Telephone: (618) 307-6116

Dana R. Vogel (*Pro Hac Vice*)
DRV@mccunewright.com
**MCCUNE WRIGHT AREVALO, LLP**
4802 East Ray Road, Suite 23-403
Phoenix, AZ 85044
Telephone: 909-557-1250

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ML PRODUCTS INC. | Case No.: 5:21-cv-01930-MEMF-KK |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT NINESTAR TECHNOLOGY CO. LTD.'S MOTION TO DISMISS** |
| v. | |
| NINESTAR TECHNOLOGY CO. LTD.; NINESTAR CORP.; ASTER GRAPHICS, INC.; BILLIONTREE TECHNOLOGY USA, INC.; MOUNTAIN PEAK. INC; V4INK INC.; and DOES 1 through 125, inclusive, | *[(Proposed) Order and Response in Opposition to Request for Judicial Notice Filed Concurrently Herewith]*  Hon. Maame Ewusi-Mensah Frimpong  Date: June 16, 2022 Time: 10:00 a.m. Courtroom: 8B |
| Defendants. | |

# TABLE OF CONTENTS

INTRODUCTION AND OVERVIEW OF ALLEGATIONS ........................................................1

LEGAL STANDARD.................................................................................................................3

ARGUMENT .............................................................................................................................4

I.      Plaintiff Alleges False Statements Plausibly Giving Rise to Its Lanham Act, FAL, and UCL Claims ...............................................................................................................4

     A.  Plaintiff Alleges Actionable False Statements in Ninestar's Product Review Manipulation ...............................................................................................5

          1.  Plaintiff Alleges False Statements ...........................................................6

          2.  The Review Manipulation Is Attributable to Ninestar................................8

          3.  The Complaint Satisfies Rule 9(b)...........................................................13

     B.  Plaintiff Alleges Actionable False Statements in Ninestar's Straw-Seller Strategy ...................................................................................................15

II.     ML Products Adequately Pleads Injury Proximately Caused by Ninestar .................17

III.    ML Products Sufficiently Pleads Its California UCL and FAL Claims .....................19

     A.  Competitor Standing Does Not Require Direct Reliance, Only Injury in Fact, Which ML Products Sufficiently Pleads .........................................................19

     B.  ML Products States a Claim Under the UCL's Unlawful Prong ...........................21

     C.  ML Products States a Claim Under the UCL's Unfair Prong...............................21

     D.  ML Products May Seek Disgorgement and There is No Basis to "Dismiss" or "Strike" Its Claims or Allegations ........................................................23

IV.    The Court Should Allow Plaintiff Leave to Amend to Cure any Deficiencies ...........24

CONCLUSION.........................................................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page(s)

Cases

*23andMe, Inc. v. Ancestry.com DNA, LLC*,
    356 F. Supp. 3d 889 (N.D. Cal. 2018) ................................................................. 13

*In the Matter of Certain Toner Cartridges & Components Thereof Comm'n Opinion, USITC Inv. No. 337-TA-740*, 2011 WL 13352062 (Oct. 5, 2011) ............................................. 11

*A White & Yellow Cab Inc. v. Uber Techs., Inc.*,
    No. 15-CV-05163, 2017 WL 1208384 (N.D. Cal. Mar. 31, 2017) .......................... 19

*Allergan, Inc. v. Athena Cosmetics, Inc.*,
    640 F.3d 1377 (9th Cir. 2011) ..................................................................... 19, 20

*AlphaCard Sys. LLC v. Fery,LLC*,
No. 19-20110, 2020 WL 4736072 (D.N.J. Aug. 14, 2020) ............................. 5, 7, 8, 15

*Andrus ex rel. Andrus v. Arkansas*,
    197 F.3d 953 (8th Cir. 1999) ............................................................................ 24

*Ariix, LLC v. NutriSearch Corp.*,
    985 F.3d 1107 (9th Cir. 2021) ............................................................................ 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................... 3

*Asis Internet Servs. v. Optin Global, Inc.*,
    No. C 05-5124, 2006 WL 2792436 (N.D. Cal. Sept. 27, 2006) .............................. 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................... 3

*BHRS Group, LLC v. Brio Water Technology, Inc.*,
    No. 2:20-cv-07652, 2020 WL 9422352 (C.D. Cal. Dec. 14, 2020) .......................... 8

*BHRS Grp., LLC v. Brio Water Tech., Inc.*,
    553 F. Supp. 3d 793 (C.D. Cal. 2021) ................................................................. 8

*Bly- Magee v. California*,

    236 F.3d 1014 (9th Cir. 2001) ................................................................... 3, 13

*Casper Sleep, Inc. v. Nectar Brand LLC*,

    No. 18-Civ-4459, 2020 WL 5659581 (S.D.N.Y. Sept. 23, 2020) ........................ 9, 13

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,

    20 Cal.4th 163 (1999) .................................................................... 21, 22

*Cisco Sys., Inc. v. Beccela's Etc., LLC*,

    403 F. Supp. 3d 813 (N.D. Cal. 2019) .......................................................... 21

*Clayworth v. Pfizer, Inc.*,

    49 Cal. 4th 758 (2010) ......................................................................... 20

*Cleary v. News Corp.*,

    30 F.3d 1255 (9th Cir.1994) ..................................................................... 4

*Clorox Co. v. Reckitt Benckiser Group PLC*,

    398 F.Supp.3d 623 (N.D. Cal. 2019) ............................................................ 16

*Colgan v. Leatherman Tool Grp., Inc.*,

    135 Cal. App. 4th 663, (2006) .................................................................. 24

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,

    751 F.3d 990, (9th Cir. 2014) .................................................................... 7

*Farrell v. Boeing Employees Credit Union*,

    761 Fed.Appx. 682 (9th Cir. 2019) .............................................................. 17

*Foman v. Davis*,

    371 U.S. 178 (1962) ........................................................................... 24

*Gerritsen v. Warner Bros. Ent. Inc.*,

    112 F. Supp. 3d 1011 (C.D. Cal. 2015) .......................................................... 17

*Grasshopper House, LLC v. Clean & Sober Media, LLC*,

    No. 18-cv-00923, 2018 WL 6118440 (C.D. Cal. July 18, 2018).......................... 2, 4, 9

*Hadley v. Kellogg Sales Co.*,

    243 F.Supp.3d 1074 (N.D. Cal. 2017) ........................................................... 22

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ................................................................. 21

*In re Actimmune Mktg. Litig.*,
  No. C 08-02376, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) ................................ 22

*In re Century Aluminum Co. Securities Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ................................................................. 7

*In re Tobacco II Cases*,
  46 Cal. 4th 298, 207 P.3d 20 (2009) ...................................................... 19, 24

*In re Tracht Gut, LLC*,
  836 F.3d 1146 (9th Cir. 2016) ................................................................. 3

*In the Matter of Certain Toner Cartridges & Components Thereof Comm'n Opinion*,
  USITC Inv. No. 337-TA-740, 2011 WL 13352062 (Oct. 5, 2011) ........................... 11

*In the Matter of Certain Toner Cartridges & Components Thereof Ord. 26*,
  USITC Inv. No. 337-TA-740, 2011 WL 2470590 (June 1, 2011)........................... 2, 11

*In the Matter of Certain Toner Cartridges, Components Thereof, & Sys. Containing Same Ord.*
  USITC Inv. No. 337-TA-1174, 2020 WL 5202646 (July 23, 2020) ........................... 12

*Interlink Products Int'l v. F & W Trading LLC*,
  No. 15-1340, 2016 WL 1260713 (D.N.J. Mar. 31, 2016) ................................ passim

*iYogi Holding Pvt. Ltd. v. Secure Remote Support, Inc.*,
  No. C-11-0592, 2011 WL 6291793 (N.D. Cal. Oct. 25, 2011) ................................ 5

*Johnson v. Ocwen Loan Servicing, LLC*,
  No. EDCV 17-01373, 2017 WL 10581088 (C.D. Cal. Dec. 11, 2017) ...................... 22

*JT Legal Grp. APC v. Yagoubzadeh L. Firm LLP*,
  No. CV 21-7033, 2021 WL 6618811 (C.D. Cal. Nov. 1, 2021).............................. 12

*K&N Eng'g, Inc. v. Spectre Performance*,
  No. EDCV 09-01900, 2010 WL 11468976 (C.D. Cal. Feb. 9, 2010) ...................... 14

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal.4th 1134 (2003) ...................................................................... 24

*Kwikset Corp. v. Superior Ct.*,

    51 Cal. 4th 310, 246 P.3d 877 (2011) ....................................................................... 20

*L.A. Taxi Coop., Inc. v. Uber Techs. Inc.*,

    114 F.Supp.3d 852 (N.D. Cal. 2015) ...................................................................... 19

*Levitt v. Yelp! Inc.*,

    765 F.3d 1123 (9th Cir. 2014) .................................................................................. 8

*Lexmark International Inc., v. Static Control Components Inc.*,

    572 U.S. 118 (2014) ...................................................................................... 17, 18

*Lona's Lil Eats, LLC v. DoorDash, Inc.*,

    No. 20-cv-06703, 2021 WL 151978 (N.D. Cal. Jan. 18, 2021) ................................. 16

*Lozano v. AT & T Wireless Services, Inc.*,

    504 F.3d 718 (9th Cir. 2007) ................................................................................. 24

*McGill v. Citibank, N.A.*,

    2 Cal.5th 945 (2017) ............................................................................................ 23

*McMahon v. Take-Two Interactive Software, Inc.*,

    640 F. App'x 669 (9th Cir. 2016) .............................................................................. 3

*Morongo Band of Mission Indians v. Rose*,

    893 F.2d 1074 (9th Cir. 1990) ............................................................................... 24

*Nationwide Biweekly Admin., Inc. v. Superior Court*,

    9 Cal. 5th 279 (2020) ........................................................................................... 23

*Navarro v. Block*,

    250 F.3d 729 (9th Cir. 2001) ................................................................................... 3

*Neubronner v. Milken*,

    6 F.3d 666 (9th Cir. 1993) .................................................................................... 15

*Novation Ventures, LLC v. J.G. Wentworth Company, LLC*,

    No. CV 15-00954, 2016 WL 6821110 (C.D. Cal. Feb. 1, 2016) ............................... 16

*Obesity Research Inst. LLC v. Fiber Research Int'l*, LLC,

    165 F. Supp. 3d 937 (S.D. Cal. 2016) ..................................................................... 20

*Plascencia v. Lending 1st Mortg.*,

   583 F. Supp. 2d 1090 (N.D. Cal. 2008) ................................................................. 21

*Punian v. Gillette Co.*,

   No. 14-cv-05028, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ........................... 22

*Saunders v. Superior Ct.*,

   27 Cal.App.4th 832, 33 Cal.Rptr.2d 438 (1994) .................................................... 21

*Scilex Pharmaceuticals Inc. v. Sanofi-Aventis U.S. LLC*,

   552 F.Supp.3d 901 (N.D. Cal. 2021) ..................................................................... 18

*Sensible Foods, LLC v. World Gourmet, Inc.*,

   No. 11-2819, 2012 WL 566304 (N.D. Cal. Feb. 21, 2012) ................................... 14

*Sonora Diamond Corp. v. Superior Court*,

   83 Cal. App. 4th 538-, 99 Cal. Rptr. 2d  (2000) .................................................... 12

*Southland Sod Farms v. Stover Seed Co.*,

   108 F.3d 1134 (9th Cir. 1997) ........................................................................... 4, 15

*Starr v. Baca*,

   652 F.3d 1202 (9th Cir. 2011) .................................................................................. 7

*Sue Shin v. Campbell Soup Co.*,

   No. CV 17-1082, 2017 WL 3534991 (C.D. Cal. Aug. 9, 2017) ............................. 22

*Sun Microsystems, Inc. v. Microsoft Corp.*,

   87 F.Supp.2d 992 (N.D. Cal. 2000) ....................................................................... 22

*Swartz v. KPMG LLP*,, 10

   476 F.3d 756 (9th Cir. 2007) .................................................................................. 13

*Taylor v. Yee*,

   780 F.3d 928 (9th Cir. 2015) ............................................................................. 3, 10

*ThermoLife Int'l LLC v. Sparta Nutrition LLC*,

   No. CV-19-01715, 2020 WL 248164 (D. Ariz. Jan. 16, 2020) .............................. 18

*ThermoLife Int'l, LLC v. Compound Sols., Inc.*,

   848 F. App'x 706 (9th Cir. 2021) ........................................................................... 18

Pltf.'s Mem. of P&A in Opp. to Def. Ninestar
Technology Co. Ltd.'s Mtn. To Dismiss

*Trafficschool.com, Inc. v. Edriver Inc.*,
   653 F.3d 820 (9th Cir. 2011) ................................................................... 4, 18

*United States ex rel. Anthony v. Burke Engineering Co.*,
   No. SACV 00-1216, 2004 WL 2106621 (C.D. Cal. Sept. 13, 2004) ...................... 14

*United States v. Grinnell Corp.*,
   384 U.S. 563 (1966) .................................................................................. 23

*United States v. Sequel Contractors, Inc.*,
   402 F. Supp. 2d 1142 (C.D. Cal. 2005) ........................................................ 14

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ..................................................................... 3

*Vitamins Online v. HeartWise, Inc.*,
   No. 2:13-cv-00982, 2020 WL 6581050 (D. Utah Nov. 10, 2020) .......... 5, 6, 15, 17

*Vitamins Online, Inc. v. Heartwise, Inc.*,
   No. 2:13-CV-982, 2016 WL 538458 (D. Utah Feb. 9, 2016) .............................. 9

*Vitamins Online, Inc. v. HeartWise, Inc.*,
   207 F.Supp.3d 1233 (D. Utah 2016) ..................................................... 6, 8, 9

*VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*,
   673 F. Supp. 2d 1073 (E.D. Cal. 2009) ........................................................ 20

*Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
   549 F.Supp.2d 1168 (N.D. Cal. 2007) ........................................................... 4

*Water Inc. v. Everpure Inc.*,
   No. CV 09-3389, 2011 WL 13176096 (C.D. Cal. Aug. 23, 2011) ...................... 14

*Watson Labs., Inc. v. Rhone-Poulenc Rover, Inc.*,
   178 F.Supp.2d 1099 (C.D. Cal. 2001) .......................................................... 22

*William H. Morris Co. v. Grp. W, Inc.*,
   66 F.3d 255 (9th Cir. 1995) .......................................................................... 8

*Williams v. Gerber Products Co.*,
   552 F.3d 934 (9th Cir. 2008) ........................................................................ 3

Statutes

15 U.S.C. § 1117(a) ........................................................................................ 24

15 U.S.C. § 1125(a) ................................................................................ 1, 17, 21

Cal. Bus. & Prof. Code § 17200 .................................................................... 19

Cal. Bus. & Prof. Code § 17203 .................................................................... 23

Cal. Bus. & Prof. Code § 17500 .................................................................... 19

Pltf.'s Mem. of P&A in Opp. to Def. Ninestar
Technology Co. Ltd.'s Mtn. To Dismiss

## INTRODUCTION AND OVERVIEW OF ALLEGATIONS[1]

ML Products Inc. is a successful seller of third-party ink and toner cartridges on the Amazon.com sales platform. As ML Products alleges in its Complaint, Dkt. 1 (hereafter "Compl."), Amazon uses an algorithm to prioritize organic search results for keyword searches made by consumers. For instance, if a consumer searches Amazon for "Canon 046H" toner, the algorithm determines which available products to display in the search results, and in what order. A limited number of products will appear on the first page of Amazon's search results and other competing products appear on sequential pages thereafter. As ML Products alleges, placement at or near the top of the search results is critical to sales, because most shoppers never look beyond the first page of search results and most purchases are made from among the first few listings.

While ML Products accepts that there is competition for sales on Amazon, some of ML Products' direct competitors have seized on a number of nefarious practices in order to dominate ink and toner sales in the space. These sellers employ various false, deceptive, and otherwise unfair tactics to game the Amazon algorithm, elevating their own products in the search result rankings and simultaneously pushing down the competing products sold by Plaintiff and other honest sellers. These tactics include, among other practices, commissioning fake product reviews; compensating customers to make favorable reviews or to delete unfavorable reviews; using "ghost" accounts to create the false impression of interest in or sales of products, to inflate product ratings, or to manipulate the "helpful" voting on product reviews; and reusing older product listings to falsely capitalize on the sales and review history of other products. By coupling these tactics with their use of multiple seller accounts that appear to be offering competing products, some sellers are able to capture multiple top spots in the search results, further relegating honest sellers like Plaintiff. Compl. ¶¶ 2-6.

Defendant Ninestar Technology Co. Ltd. ("Ninestar") is one of these actors. As ML Products recounts in its Complaint, Ninestar has engaged in a sweeping scheme of false product reviews and similar tactics, enhanced by its use of straw-selling accounts that create the false appearance of

---

[1] Plaintiff's Opposition to Ninestar Technology Co. Ltd.'s motion to dismiss (Dkt. 62) herein contains Plaintiff's most comprehensive briefing and serves as Plaintiff's lead brief. Many arguments herein are incorporated by reference into Plaintiff's briefs in opposition to the remaining defendants' motions to dismiss.

competition among its own toner and ink brands. ML Products asserts claims against Ninestar (and several others) for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and violations of California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL").

ML Products meticulously evidences Ninestar's conduct in the Complaint. It uses screenshot images to demonstrate actual examples of Ninestar manipulating product reviews through offers to compensate reviewers. Compl. ¶¶ 78-82, 88 (*e.g.*, offered customer a "full refund and bonus for removing bad review."). It uses product sales and review data to demonstrate that Ninestar products "earn" positive reviews at astronomical rates as compared to far-better-selling competing OEM brand products. Compl. ¶¶ 84-87 (*e.g.*, over 100x review rate of OEM). As Plaintiff plausibly alleges, this is a leading indicator of review manipulation. *Id.* ¶¶ 3, 89, 187-189. ML Products surveys data about "helpful" voting on reviews, demonstrating that one Ninestar product has amassed well more than double the "helpful" votes for 5-star reviews as its competing OEM brand product has collected— despite selling only two percent as many units. *Id.* ¶ 90. All of this is against the backdrop of detailed allegations that explain the how and the why behind Ninestar's scheme. *Id.* ¶¶ 2 (importance of placement), 180-181, 185-186 (importance of positive reviews), 3, 89, 176-192 (prominence of bad tactics and red flags that suggest falsity). The Complaint also shines a light on Ninestar's web of sham affiliates and alter egos, a network that the International Trade Commission had occasion to label "an intricate array of confusingly similar subsidiaries," who "are all plainly in the same business syndicate." *Certain Toner Cartridges and Components Thereof*, Inv. No. 337-TA-740 ("*Toner Cartridges 740*"), Initial Determination, 2011 WL 2470590, at *14 (June 1, 2011).

Ninestar now moves to dismiss Plaintiff's Complaint. It contends that ML Products fails to allege any false statement attributable to Ninestar, that Plaintiff fails to plead injury proximately caused by Ninestar, and that Plaintiff lacks standing for or otherwise fails to state a claim under the California UCL and FAL. These arguments are meritless. Misattribution of product ratings to a (supposedly) unbiased source is "false and misleading." *Grasshopper House, LLC v. Clean & Sober Media, LLC*, No. 18-cv-00923, 2018 WL 6118440, at *5 (C.D. Cal. July 18, 2018). And, a number of courts have found that Lanham Act claims based on schemes to manipulate Amazon reviews adequately allege falsity. *See*, *e.g.*, *Interlink Products Int'l v. F & W Trading LLC*, No. 15-1340, 2016 WL 1260713, at *2, 9 (D.N.J.

Mar. 31, 2016). Plaintiff alleges Ninestar's false statements in droves—and with all the specificity necessary to satisfy Rule 9(b). Further, Plaintiff alleges actionable injury to its commercial interest in sales or business reputation as a proximate result of Ninestar's conduct. Because ML Products adequately alleges its Lanham Act claim and because, as discussed below, it has standing to pursue its UCL and FAL claims and adequately states those claims, the Court should deny Ninestar's motion in its entirety.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint need only 'contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Dismissal is proper only where there is no cognizable legal theory, or an absence of sufficient facts alleged to support a cognizable legal theory." *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015), cert. denied, 136 S. Ct. 929 (2016), citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A plaintiff need not show he is likely to prevail on the merits of his claims; he need only allege facts that establish "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

When deciding a motion to dismiss, a court "accept[s] all factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party." *Taylor*, 780 F.3d at 935; *McMahon v. Take-Two Interactive Software, Inc.*, 640 F. App'x 669, 671 (9th Cir. 2016); *Williams v. Gerber Products Co.*, 552 F.3d 934, 937 (9th Cir. 2008). The court draws all reasonable inferences from the complaint in favor of the plaintiff. *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

To the extent that claims are grounded in fraud, Rule 9(b) typically requires these claims to be pleaded with particularity. A pleading satisfies Rule 9(b) where the allegations are "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge[.]" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted). The standard requires the plaintiff set forth "the who, what, when, where and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).

## ARGUMENT

**I.     Plaintiff Alleges False Statements Plausibly Giving Rise to Its Lanham Act, FAL, and UCL Claims.**

The Lanham Act "prohibits any person from misrepresenting her or another person's goods or services in commercial advertising or promotion." *Ariix, LLC v. NutriSearch Corp*., 985 F.3d 1107, 1114-15 (9th Cir. 2021) (citation, internal quotations omitted). Ninestar argues that ML Products fails to allege a false statement attributable to it, but any fair reading of Plaintiff's complaint shows otherwise. "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1139 (9th Cir. 1997).[2] A statement is "false" if it is "false or misleading, that it actually deceives or has the tendency to deceive a substantial segment of its audience, that it's likely to influence purchasing decisions and that the plaintiff has been or is likely to be injured by the false advertisement." *Grasshopper House, LLC v. Clean & Sober Media, LLC*, No. 18-cv-00923, 2018 WL 6118440, at *5 (C.D. Cal. July 18, 2018), quoting *TrafficSchool.com, Inc. v. Edriver Inc*., 653 F.3 820, 828 (9th Cir. 2011).

Plaintiff adequately alleges falsity in Ninestar's sweeping manipulation of Amazon product reviews and in its straw-seller strategy. Attributing a biased product rating to an ostensibly unbiased source—as Ninestar does on a staggering scale—is "both false and misleading." *See*, *e.g.*, *Grasshopper House*, 2018 WL 6118440, at *5 (review misattribution sufficiently false to state a Lanham Act claim); *Interlink Products Int'l,* 2016 WL 1260713, at *2, 9 (D.N.J. Mar. 31, 2016) (allegations that defendants "purposefully drive up Amazon product ratings" with biased professional reviewers adequately allege falsity element). For these reasons and as further discussed below, ML Products' allegations are sufficient to state a claim for Lanham Act false advertising.

---

[2] The other elements of a Lanham Act § 43(a) false advertising claim are: "(2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod*, 108 F.3d at 1139. Ninestar does not challenge the commercial nature of the conduct, and does not challenge the deception, materiality, or interstate commerce elements. Plaintiff addresses the proximate cause element in Point II, *infra*.

"In the Ninth Circuit, claims of unfair competition and false advertising under [the FAL and the UCL] are "substantially congruent" to claims made under the Lanham Act." *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F.Supp.2d 1168, 1182 (N.D. Cal. 2007) citing *Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir.1994). Accordingly—and as Ninestar does not dispute—if ML Products satisfies the falsity element of the Lanham Act, it also satisfies the "congruent" falsity element of the FAL and the UCL. For the reasons that follow, Plaintiff has done just that.

### A.     Plaintiff Alleges Actionable False Statements in Ninestar's Product Review Manipulation.

ML Products alleges that Ninestar has engaged in a sweeping campaign to manipulate the Amazon review process. Courts recognize that similar allegations suffice to state a false advertising claim under the Lanham Act. For instance, in *Interlink Products*, the court denied a motion to dismiss the plaintiff's false advertising claim asserting that competitor "Defendants purposefully drive up Amazon product ratings by enlisting inherently biased professional reviewers intending for consumers to rely on the misleading heightened reviews when selecting a product for purchase." 2016 WL 1260713, *8-9. The court found allegations that the defendant provided "free samples" to product reviewers and engaged in a "business practice of using professional reviewers to drive up product ratings" on Amazon sufficient to allege falsity under the Lanham Act. *Id., AlphaCard Sys. LLC v. Fery LLC*, No. 19-20110, 2020 WL 4736072 (D.N.J. Aug. 14, 2020), is similar. The plaintiff there asserted a Lanham Act false advertising claim based on a business practice of "using fake reviews to drive up product ratings" which "drive visibility of Defendants' products on Amazon Marketplace and influence customer purchases of those products." *Id.* at *3. The plaintiff alleged that hundreds of "fake consumer reviews" were literally false as purporting to state honest consumer opinion when, in fact, they were otherwise. *Id.* at *1-2. In denying the motion to dismiss, the court rejected the assertion that the complaint did not identify the false statements in question and found the allegations sufficient to state a claim on implied falsity grounds. *Id.* at *3. *See also iYogi Holding Pvt. Ltd. v. Secure Remote Support, Inc.*, No. C-11-0592, 2011 WL 6291793 (N.D. Cal. Oct. 25, 2011), report and recommendation adopted, 2011 WL 6260364 (N.D. Cal. Dec. 15, 2011) (plaintiff adequately pleaded false statements where it alleged that

"Defendants' posting of shill reviews and false and misleading information on consumer websites were literally false and if not literally false were likely to confuse customers.").

*Vitamins Online v. HeartWise, Inc.*, No. 2:13-cv-00982, 2020 WL 6581050, *1 (D. Utah Nov. 10, 2020), is also on-point and instructive. There, a competing seller of dietary supplements engaged in violations of Section 43(a) of the Lanham Act, in part, by "manipulating Amazon.com's … customer review system" in order to increase product sales. *Vitamins Online*, 2020 WL 6581050, *1. At trial, the court found that the defendant's systematic voting on the "helpfulness" of reviews (which elevates certain reviews to the top of the first page, beyond which most consumers do not look) and its offer of free products to customers in exchange for reviews established the falsity element of the plaintiff's Lanham Act claims, whether evaluated as claims of literal falsity, implied falsity, or the use of a deceptive "device." *Id.* at *9-10, 19-20.[3]

### 1.    Plaintiff Alleges False Statements

ML Products alleges that Ninestar engages in precisely these types of conduct, including plausible allegations that Ninestar commissioned false (and undisclosed) compensated reviews or offered free products for reviews, and plausible allegations of a sweeping scheme to inflate reviews and ratings. On the first point, ML Products alleges examples of Ninestar offering compensation to product reviewers to remove negative reviews. Compl. at, *e.g.*, ¶ 79 ("The seller tries to manipulate reviews by offering a full refund and bonus for removing your bad review." "Company keeps harassing me to change review for a refund." "Seller saw my negative review and emailed me to offer new cartridges in return to remove negative review."). *See also id*. at ¶ 81 ("Vendor … offered an additional $10 if I delete my [negative] review."). Ninestar further offered outright payments to customers for favorable reviews. Compl. ¶ 80 (customer offered gift card "to review a product that I have not purchased. They specifically noted that while they knew I did not need it and had not bought it, that they would send me money to

---

[3] In an earlier ruling, the court explained that offering free products in exchange for positive reviews and block voting on the helpfulness of reviews both "qualify as the use of a device in commerce as described by Section 43(a)(1) of the Lanham Act." *Vitamins Online, Inc. v. HeartWise, Inc.,* 207 F.Supp.3d 1233, 1240-41 (D. Utah 2016) vacated on other grounds in part on reconsideration by *Vitamins Online, Inc. v. HeartWise, Inc.,* 2017 WL 2733867 (D. Utah May 11, 2017). Although the plaintiff was "not able to point to a specific review or a specific helpfulness vote that was caused by [defendant]," the court found that the defendant used "a mechanism for the special purpose of increasing the number of positive reviews for its products [and] for the special purpose of increasing the visibility of positive reviews and decreasing the visibility of negative reviews." *Id.*

post a positive review and 'help them out.'"). *See also id.* at ¶ 82 (offering a $35 Amazon gift card and purchase price refund in exchange for 5-star product review). One reviewer demonstrated in the body of his 5-star review how Ninestar uses a QR code on its packaging to offer an Amazon gift card in exchange for a "product picture or video" review. Compl. ¶ 88. Ninestar suggests (Mem. at 12) that this example is an "alternative explanation" for the astounding volume of favorable reviews associated with its products (see below), but this argument backfires. Ninestar omits to mention that the reviewer was offered an incentive for his review, which is not an innocent explanation for why Ninestar products have outlandish review rates, but instead an acknowledgement of impliedly false conduct. *AlphaCard*, 2020 WL 4736072, at *3.[4]

On the second point, ML Products plausibly alleges that Ninestar's practices were both extensive and effective. *Compare* Compl. ¶ 41 (a "feedback loop fueled by deception") *with AlphaCard*, 2020 WL 4736072, at *1 (false reviews used to "exploit[] Amazon's search algorithm" and create "a self-reinforcing cycle of wrongful gains at the expense of honest competitors like Plaintiffs."). The Complaint demonstrates that Ninestar ink and toner products have "earned" mind-boggling levels of reviews and ratings on Amazon. For instance, as compared with the relevant OEM counterpart offerings, one Ninestar product amassed on an equalized sales basis more than twenty-three times the number of positive reviews. *See* Compl. ¶ 86 (Ninestar LxTek brand more than three times the positive reviews as compatible OEM HP 902XL, despite just fourteen percent of sales). Another garnered *more than one hundred times* the OEM's positive reviews on an equalized sales basis. *See id.* ¶ 87 (Ninestar GPC Image brand more than triple the positive reviews of the competing OEM HP 414A, despite only 3.5 percent as many sales). Ninestar also uses false "helpful" votes to further manipulate the Amazon review process. *Id.* ¶ 90. For instance, despite selling over the last two years only 2 percent as many

---

[4] The "alternative explanation" cases cited by Ninestar address the distinction between allegations asserting a "possible" entitlement to relief and those which establish a "plausible" entitlement to relief. *See In re Century Aluminum Co. Securities Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013); *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, (9th Cir. 2014). *Century Aluminum* considered that "something more" is required when a claim is based on "two *possible* explanations, *only one of which can be true* and *only one of which results in liability*." 729 F.3d at 996-998 (emphasis added). That is not the situation here: incentivizing customers with free gift cards (*i*) does not mean Ninestar does not use additional manipulation tactics, and (*ii*) also establishes falsity. Either way, both cases acknowledge that under *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), when faced with two plausible explanations, a plaintiff's complaint may be dismissed "only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*." (Emphasis in orig.). That is not the case here.

replacements for the HP 564XL as the OEM, Ninestar's offering boasts almost three times the number of "helpful" votes for 5-star reviews. *Id.* With equalized sales, 5-star reviews of Ninestar's offering would tally well over one hundred times the OEM's "helpful" review votes.

These well-pleaded facts render inapposite the *BHRS Group* case upon which Ninestar principally relies. In that case, the court noted the lack of plausible allegations that the defendant itself posted or was responsible for the reviews in question, citing to the court's own explanation in an earlier order. *BHRS Grp., LLC v. Brio Water Tech., Inc.,* 553 F. Supp. 3d 793, 799 (C.D. Cal. 2021). That earlier order referred to just three reviews of BHRS products which the plaintiff alleged were "false," with the only connection between the reviewers and the defendant being "vague and tenuous allegations" that the reviewers had relationships with Brio management or employees, such as being classmates and Facebook friends. *BHRS Group, LLC v. Brio Water Technology, Inc.*, No. 2:20-cv-07652, 2020 WL 9422352, at *4 (C.D. Cal. Dec. 14, 2020). Unlike the allegations against Ninestar, Compl. ¶¶ 79-82, 88, there was "no allegation[]" that anyone "acting on behalf of [the defendant] instructed or otherwise engaged [the reviewers.]" 2020 WL 9422352, at *4. Equally important to its decision, the *BHRS* court distinguished cases like *Interlink* and *AlphaCard* on the basis that BHRS did not allege "a massive scheme of ratings manipulation involving an excessive number of paid reviews" or "hundreds of phony customer reviews." 553 F.Supp.3d at 800. As discussed above, ML Products alleges just such a "massive scheme."[5]

**2.    The Review Manipulation Is Attributable to Ninestar.**

Ninestar argues that consumer reviews are "mere opinion" rather than actionable statements of fact, Mem. at 11, and argues that those reviews and other conduct alleged in the Complaint are not attributable to it. These arguments fail.

"The Lanham Act encompasses more than blatant falsehoods. It embraces innuendo, indirect intimations, and ambiguous suggestions evidenced by the consuming public's misapprehension of the hard facts underlying an advertisement." *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 257-58

---

[5] Ninestar's case, *Levitt v. Yelp! Inc.*, 765 F.3d 1123 (9th Cir. 2014), has no bearing here. In *Levitt*, which was not a Lanham Act case, the court found no plausible connection between the small number of reviews at issue and the Yelp! CEO's admission that it wrote some reviews. 765 F.3d at 1127. There is no need to "tie" to Ninestar, Mem. at 13, a consumer group report identifying high numbers of product reviews as indicative of review manipulation. That report merely explains (and bolsters) ML Products' otherwise well-pleaded allegations about Ninestar's astronomical review statistics. Compl. ¶¶ 85-89.

(9th Cir. 1995), supplemented, 67 F.3d 310 (9th Cir. 1995) (citation, quotation omitted). As the court noted in *Vitamins Online*, "to fall within the text of the Lanham Act, a defendant does not need to *make* a statement but only needs to *use* a statement or other form of conduct specified in the Act." 207 F.Supp.3d at 1241-42 (emphasis in original). In *Grasshopper House*, the court properly observed that the contention that consumer "opinions" are inactionable opinion "mischaracterizes" the actual claim, *i.e.*, that the product rating was misattributed as unbiased. 2018 WL 6118440, at *5 ("Companies violate the Lanham Act whenever they offer misleading 'opinions' to promote their own financial interests."). The question is not whether the particular reviews identified in the Complaint were *authored* by Ninestar. Rather, the point is that ML Products plausibly alleges that Ninestar has engaged in systematic manipulation of the Amazon review process in order falsely to advertise its products. *See also   Vitamins Online, Inc. v. Heartwise, Inc.,* No. 2:13-CV-982, 2016 WL 538458, at *6 (D. Utah Feb. 9, 2016) (noting that the actual claim is that the conduct "giv[es] a false impression" about which reviews are helpful and that a "high number of unbiased customers chose to post positive reviews on Amazon.com without any anticipation of reward."). Whatever the content of these particular consumers' comments or ratings, ML Products' allegations plausibly demonstrate that Ninestar engaged in a scheme to manipulate Amazon product reviews. (The Court may also reasonably infer that other reviewers did not comment on Ninestar's incentives within their reviews.) This is sufficient to establish falsity.[6]

Ninestar also argues that certain conduct alleged in the Complaint is attributable to its affiliated brands and shell companies rather than to it. Mem. at 10 & n.4, 12. But as discussed below, ML Products adequately alleges that these entities function together as a common enterprise. Compl. ¶ 12 (Ninestar and Ninestar Corp. "own, operate, and/or control, directly or indirectly, a number of ostensibly separate 'brands' of replacement toner and ink which are offered for sale in the United States on Amazon. These brands, including a number of shell corporations affiliated therewith, are alter egos of Ninestar U.S. and Ninestar China. Ninestar U.S., Ninestar China, and these alter ego corporate affiliates and brands are related entities under common ownership and control and are all part of a common enterprise that the

---

[6] In *Casper Sleep, Inc. v. Nectar Brand LLC*, No. 18-Civ-4459, 2020 WL 5659581, *9-10 (S.D.N.Y. Sept. 23, 2020), cited by Ninestar, the court dismissed the counterclaims in question as there was no falsity in the (unspecified) reviews where the financial relationship was disclosed. *Compare* Compl. ¶¶ 79-82 (offering covert payment for positive reviews or to delete— and thus falsify—existing negative reviews).

Ninestar Defendants refer to as 'Ninestar' and/or the 'Ninestar Group.'"). Ninestar agrees that ML Products alleges a "unified course of fraudulent conduct," Mem. at 7, but argues that it is not responsible for that conduct. This is contrary to Plaintiff's allegations and, at this stage, the Court must accept factual allegations and construe the Complaint in the light most favorable to Plaintiff. *Taylor*, 780 F.3d at 935.

In any event, far from threadbare, Plaintiff's allegations are based on an astounding overlap and business interchangeability among these brands and shell entities, which is evident from publicly available documents referenced in the Complaint. *See generally* Compl. ¶¶ 38-77. Ninestar ignores or (apparently) rejects Plaintiff's allegations with respect to Ninestar brands Valuetoner, e-jet, E-Z Ink, LxTek and GPC Image, simply labeling them conclusory. Mem. at 5 n.2, 12. But there is nothing conclusory about the specific allegation that the Ninestar Group acquired Topjet, the prior owner of those brands. Compl. ¶ 46. After the acquisition of Topjet in 2017, those brands expanded Ninestar's network of alter-egos and engaged in various actions attributable to Ninestar. *Id.* ¶ 59 (E-Z Ink and Valuetoner offering "competing" replacements for Brother TN227). The Ninestar alter ego Valuetoner offered customers compensation for deleting bad reviews about its HP61xl ink. *Id.* ¶ 79. Ninestar's LxTek brand ink had four times the number of positive reviews as the comparable Hewlett-Packard 902XL OEM ink—despite selling just 14 percent as many units. *See id.* ¶ 86. E-Z Ink and Valuetoner sold "competing" Brother TN-227 toner, and in doing so also "competed" with other Ninestar brands myCartridge, OA100, Ziprint, Myik, Teino, INKNI, and Mytoner. Compl. *Id.* ¶ 52. (Ziprint and Myik are owned by Ninestar Technology Co. Ltd.)

Ninestar ignores other well-pleaded allegations uncovering the web of sham entities. For instance, it ignores that William Dai (a/k/a Weiming Dai) the Chief Executive Officer and Agent for Service of Process for Ninestar Technology is also an employee in various capacities at Lemero, ICartridge Corp., and Plenty Talent Corp. Compl. ¶ 58. These shell companies own various Ninestar brand trademarks and share various addresses (along with other shell companies Zhuhai Seine Technology Co. Ltd. and Ninestar Management Co., Ltd.), thus tying Dai to no fewer than eight different ink and toner brands: Ninestar, Lemero, myCartridge, OA100, Ziprint, Myik, Teino, and HiPage. Compl. ¶¶ 47-58. Many of these entities appear to have no employees, and while Ninestar Technology Company, Ltd. received a Paycheck Protection Program loan in 2020, a number of other "separate"

Ninestar entities did not—plausibly suggesting a lack of employees. *See id.* ¶ 77. Ninestar Management Co., Ltd. also operates as G&G Technology Co. Ltd., which appears to be the Ninestar Group alias, *id.* ¶ 48, and which likely is the same entity disclosed as parent of Ninestar Technology Co. Ltd. in its Notice of Interested Parties filed in connection with this lawsuit. *See* Dkt. 61 (identifying Zhuhai Hengqin G&G Technology Co., Ltd. as parent). In addition to the false advertising and review manipulation alleged in the Complaint, the brands "owned" by those shell companies also routinely "compete" against each other. As noted above, ten different Ninestar brands "compete" to sell Brother TN-227 compatible toner. Compl. ¶ 52. Those brands are connected by a web of shared addresses and corporate officers. *Id.* ¶¶ 53-60. Ninestar brands Ziprint, Lemero, Teino, and Ejet all "compete" to sell Canon 046H compatible replacements. *Id.* ¶ 61; *see also id.* ¶ 62 (these brands connected by many of the same links). Lemero, myCartridge, Teino, E-Z Ink, GPC Image, Kingjet, and Starink all "compete" to sell Canon PGI-250xl 251xl Compatible Ink. *Id.* ¶ 64; *see also id.* ¶ 65 (brand connections). Ziprint, Lemero, OA100, Valuetoner, GPC Image, LxTek, Uniwork, Kingjet, and Starink all "compete" to sell HP 202x Compatible Toner. *Id.* ¶ 70; *see also id.* 71 (brand connections). And on and on. *See* Compl. ¶¶ 49, 64-65, 67-68. These are only some "examples," *id.* ¶ 51, of Ninestar's common enterprise. Beyond the overlapping, shared business function of these entities in the "opaque web of sham business entities," *id.* ¶ 6, lies the simple fact that, "a sale from any one … is a sale by Ninestar." *Id.* ¶ 45.

In view of this extensive corporate commingling, Ninestar points in the wrong direction when it accuses ML Products of "conjecture and obfuscation." Mem. at 14. The ITC agrees: it noted that the thicket of Ninestar affiliates and entities "employ[s] complex business arrangements that make enforcement of U.S. intellectual property [] rights difficult." *Certain Toner Cartridges and Components Thereof*, Inv. No. 337-TA-740 ("*Toner Cartridges 740*"), Initial Determination, 2011 WL 2470590, at *14 (June 1, 2011).[7] The ITC likewise noted that a variety of companies affiliated with Ninestar "create an intricate array of confusingly similar subsidiaries," and "are all plainly in the same business syndicate." *Toner Cartridges 740*, Initial Determination, 2011 WL2470590, at *14. More recently, the ITC found in an action brought by OEM Brother that a group of entities, including the above-mentioned

---

[7] The ITC opinion related to Zhuhai Seine Technology, which the ITC noted was affiliated with Ninestar. *Toner Cartridges 740*, Comm'n Op., 2011 WL 13352062, at *4 (Oct. 5, 2011). *See also* Compl. ¶ 43 (Zhuhai Seine Technology among Ninestar shell companies).

Ninestar brand E-Z Ink (*see* Compl. ¶ 47), had "engaged in business practices deliberately designed to mask their identities," "mak[ing] it difficult to enforce intellectual property rights against them." *See Certain Toner Cartridges and Components Thereof*, Inv. No. 337-TA-1174, Initial Determination, 2020 WL 5202646, at \*63 (July 23, 2020) (also noting the use of "multiple business names" and an "array of subsidiaries and changing corporate profiles"). "Not only is it common for manufacturers and sellers of aftermarket toner cartridges to do business under more than one name," the Administrative Law Judge observed, but "foreign aftermarket toner cartridge manufacturers have the capacity to replicate their operations so as to appear to be a new business in a matter of months." *Id.* at \*62.

"Under the alter ego doctrine, [] when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners." *JT Legal Grp. APC v. Yagoubzadeh L. Firm LLP*, No. CV 21-7033, 2021 WL 6618811, \*4 (C.D. Cal. Nov. 1, 2021). "In California, two conditions must be met before the alter ego doctrine will be invoked. First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." *Id.*

Factors regularly considered by courts when making an alter ego determination include: (1) commingling of funds and other assets; (2) the holding out by one entity that it is liable for the debts of the other; (3) identical equitable ownership of the two entities; (4) use of the same offices and employees; (5) use of one as a mere shell or conduit for the affairs of the other; (6) inadequate capitalization; (7) disregard of corporate formalities; (8) lack of segregation of corporate records; and (9) identical directors and officers. *Id.* "No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied." *Id.* (quoting *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 538-39, 99 Cal. Rptr. 2d 836 (2000)).

Based on the Ninestar affiliates' commingled operations and overlapping corporate affairs and control, Plaintiff adequately alleges a unity of interest and ownership in the various Ninestar affiliate entities to invoke the alter ego doctrine. *See also* Compl. ¶ 77 (Ninestar jointly and severally responsible

for all Ninestar entities, shell companies, brand entities). Because it would be inequitable to reward this intentional misuse of the corporate form, the Court should treat Ninestar and its affiliates as alter ego entities.[8]

### 3.   The Complaint Satisfies Rule 9(b).

Nor, finally, is there any validity to Ninestar's contention that the Complaint fails to satisfy Rule 9(b). Although the Ninth Circuit has not held that Lanham Act false advertising claims must satisfy Rule 9(b), *23andMe, Inc. v. Ancestry.com DNA, LLC*, 356 F. Supp. 3d 889, 908 (N.D. Cal. 2018), ML Products' allegations are more than sufficient to give Ninestar "notice of the particular misconduct which is alleged to constitute the fraud charged so that [it] can defend against the charge[.]" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted). In a footnote, Ninestar begrudgingly acknowledges the upshot of ML Products' claim that Defendants—*among other things*—incentivize reviews at "high volume[s]" to manipulate the Amazon search algorithm and crowd out competitors. Mem. at 15 n.7. Its only response is that this is "conclusory and lacks any basis in fact." *Id.* (citing *Casper Sleep*, 2020 WL 5659581). But unlike the counterclaim in *Casper Sleep*, which "allege[d] that Plaintiff 'manipulates' reviews on Amazon, without explaining how Plaintiff accomplishes the alleged manipulation," 2020 WL 5659581, *11, ML Products' Complaint contains dozens of paragraphs both evidencing Ninestar's manipulation and "explaining how [Ninestar] accomplishes" the manipulation and injures Plaintiff. These allegations are anything but conclusory.

Indeed, ML Products alleges numerous detailed particulars of the "who, what, when, where, and how" of Ninestar's unlawful conduct. It alleges that Ninestar itself and as an enterprise in conjunction with its affiliate companies engages in the conduct amounting to false advertising. Compl. ¶¶ 35, 36, 43-51, 78-92.[9] It alleges that the conduct includes product review and ratings manipulation on Amazon through commissioning false reviews, undisclosed compensated reviews, or offers of free products in exchange for reviews; compensating purchasers to remove negative reviews; rating manipulation

---

[8] Plaintiff's alter ego allegations are by no means exhaustive. If the Court believes more is required, Plaintiff would respectfully request leave to amend to add further allegations.

[9] *See also* Points I.A.2 and I.B. Ninestar objects to treating it and its affiliates as one (Mem. at 10 n.4), but the case it cites as requiring "separate[]" allegations about each defendant involved completely unrelated and unaffiliated defendants. *See Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007). Even so, *Swartz* confirms that where multiple defendants are sued as part of a scheme, "there is no absolute requirement … [that] the complaint must identify false statements made by each and every defendant." *Id.* at 764.

(including through the use of "ghost" accounts, "recycling" old product listings, and "helpful" review voting); and using straw-seller accounts to crowd the top Amazon search results. *Id.* ¶¶ 4, 6, 39-41, 45, 75, 90, 176, 228. ML Products alleges that Ninestar has engaged in this conduct since at least 2017, *id.* ¶¶ 45-46, but also alleges specific examples of most of these practices, which are sufficient to identify when conduct took place. *Id.* ¶¶ 37-39; 52-92 (reviewer comments dated 2019, 2020, and 2021). Further, dates are discernible in the images included in the Complaint. *See id.* ¶¶ 79-81. Plaintiff alleges with particularity that this conduct took place within the Amazon sales platform, thus pleading the "where" element. Compl. ¶¶ 76, 78-92. Finally, Plaintiff alleges in great detail "how" Ninestar manipulates reviews and ratings to boost its position as a top Amazon seller: by "flooding the marketplace with [Ninestar] brands… manipulat[ing] the Amazon search algorithms with incentivized reviews, fake reviews", an "inexplicable volume of reviews and elevated product ratings," and the "false use of 'helpful' votes on reviews." *See* Compl. at, *e.g.*, ¶¶ 78-90; 182-198 (explaining how bad actors manipulate Amazon search algorithm). These allegations are decidedly unlike those in the cases Ninestar cites. *See Water Inc. v. Everpure Inc.*, No. CV 09-3389, 2011 WL 13176096 (C.D. Cal. Aug. 23, 2011) (omitting allegation of the actual statements that were allegedly false); *Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11-2819, 2012 WL 566304 (N.D. Cal. Feb. 21, 2012) (finding implausible the claim that words "veggie" and "apple" are false in connection with sale of products containing veggies and apples).

It is true that ML Products pleads just some of the (many) examples of Ninestar's manipulation, and also that "only discovery … will lift the veil ***on the totality*** of Defendants' conduct." *Id.* ¶ 42.[10] But these are specific examples, sufficient to put Ninestar on notice of the claim to defend, and where "a plaintiff is alleging a systematic practice of fraud, the complaint need not include specific details of every alleged fraudulent claim forming the basis of plaintiff's complaint but merely some representative examples." *K&N Eng'g, Inc. v. Spectre Performance*, No. EDCV 09-01900, 2010 WL 11468976 at *8 (C.D. Cal. Feb. 9, 2010). *See also United States v. Sequel Contractors, Inc.*, 402 F. Supp. 2d 1142, 1153 (C.D. Cal. 2005); *Asis Internet Servs. v. Optin Global, Inc.*, No. C 05-5124, 2006 WL 2792436, at *3

---

[10] In its brief, Ninestar omits from this quote the emphasized words ("on the totality") in order misleadingly to argue that ML Products "admits" that the Complaint fails under Rule 9(b). *See* Mem. at 9. The Complaint self-evidently contains a great deal of detail about Ninestar's conduct, but discovery will reveal more.

(N.D. Cal. Sept. 27, 2006); *United States ex rel. Anthony v. Burke Engineering Co.,* No. SACV 00-1216, 2004 WL 2106621, at *3 (C.D. Cal. Sept. 13, 2004). Finally, although Ninestar quibbles with Plaintiffs' allegations to the extent they are made "on information and belief," Mem. at 5 n.2, "allegations of fraud based on information and belief [ ] may be relaxed with respect to matters within the opposing party's knowledge," but shall "state the factual basis for the belief." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). ML Products has adequately stated that factual basis.

*   *   *

There is, in short, no plausible explanation for Ninestar's cartoonish Amazon review statistics—bolstered by allegations demonstrating specific attempts to manipulate reviews—other than a "false ratings and reviews" scheme used to manipulate the Amazon algorithm. *Id.* ¶¶ 84, 78-92. Taken together or individually, these allegations—which are but a few of "many such examples," Compl. ¶ 87—are sufficient to plead falsity under the Lanham Act. *Interlink*, 2016 WL 1260713 *9; *AlphaCard*, 2020 WL 4736072, *2-3; *Vitamins Online*, 2020 WL 6581050, *16-18.

### B.     Plaintiff Alleges Actionable False Statements in Ninestar's Straw-Seller Strategy.

As noted above, a Lanham Act false advertising claim can be premised on a statement that is "literally false, either on its face or by necessary implication," or "literally true but likely to mislead, confuse or deceive consumers." *Southland Sod*, 108 F.3d at 1139. ML Products' allegations that Ninestar uses a litany of sham selling brands in order to occupy the top organic search results, Compl. ¶¶ 6, 43-51, adequately plead both types of falsity. As Plaintiff alleges, Ninestar enhances the impact of its other deceptions by using them in combination with "multiple seller accounts that appear to offer competing products to the consumer," Compl. ¶ 6, but in actuality just offer the same Ninestar toner or ink. If, as Plaintiff alleges, the "straw-seller" accounts, controlled through an "opaque web of sham business entities," *id.*, are false fronts, then Ninestar's advertisements for these products are "literally false" for purposes of the Lanham Act. On the other hand, if these are actual entities that exist—at least on paper or in a post office box somewhere—then the advertising information (or some of it) may be literally true, but it is "likely to mislead, confuse or deceive consumers."

Ninestar argues that "the presence of the [multiple products] on the first page of Amazon search results does not amount to a false statement," Mem. at 13, but this argument takes the wrong focus. For

-15-

purposes of the straw-seller issue, the falsity is not the ultimate ranking of the products—though this both explains the strategy of using multiple sellers and it is also true that these sellers engage in ranking manipulation. The falsity in this context is instead whether consumers are or are likely to be deceived by the false designations of these sham competitors. Actual deception is a fact question, and so long as the complaint "plausibly suggest[s] a likelihood to mislead," there is no basis for dismissal. *Clorox Co. v. Reckitt Benckiser Group PLC*, 398 F.Supp.3d 623, 636 (N.D. Cal. 2019) (denying motion to dismiss Lanham Act claim). Here, Plaintiff plausibly suggests just such a likelihood. Compl. at, *e.g.*, ¶ 73 (shell companies and brands "lead the consumer to believe she is choosing from among independently competing companies or brands. In reality, the choice is from a large number of offerings of the same product sold by and for the benefit of Ninestar.").[11]

Although the plaintiff's argument in the *Novation Ventures* case, cited by Ninestar, sounds superficially similar to the *rationale* that ML Products ascribes to Ninestar's straw seller strategy (*i.e.*, "crowding" the search results), the claim there was dismissed because there was no likelihood of consumer confusion. *Novation Ventures, LLC v. J.G. Wentworth Company, LLC*, No. CV 15-00954, 2016 WL 6821110, *8 (C.D. Cal. Feb. 1, 2016). In *Novation Ventures*, the plaintiff only claimed that the advertisements in question offered a falsity if a consumer entered a very specific query into a search engine search bar: "who competes with [defendant]?" *Id.* at *7. Even then, the court noted that the advertisements were clearly labeled and segregated as advertisements, and they did not on their face suggest in any way that the advertising entity was in fact a competitor of the defendant. Further, and unlike here, because the case dealt with advertising for an expensive product, the court held that there was "no plausible likelihood of deception where the relevant reasonable consumer would exercise a heightened degree of care and precision, where the purchase price of the transactions range from $5,000 to $1,000,000 (or more)." *Id.* at *8. In short, *Novation Ventures* does nothing to immunize Ninestar's deception as alleged here. *See also Lona's Lil Eats, LLC v. DoorDash, Inc.*, No. 20-cv-06703, 2021 WL 151978, * 7 (N.D. Cal. Jan. 18, 2021) (denying motion to dismiss Lanham Act claim asserting that

---

[11] Nor is there any lack of specificity in Plaintiff's allegations. *See* Compl. ¶¶ 37, 49 (identifying specific products); 52-60 (Brother TN-227: at least ten different Ninestar brands); 61-63 (Canon 046H: at least four different Ninestar brands); 64-66 (Canon PGI-250xl and 251xl: at least seven different Ninestar brands); 67-69 (Canon PGI-280xl and 281xl: at least twelve different Ninestar brands); 70-72 (HP 202X: at least nine different Ninestar brands).

misleading information on website landing pages "steered non-Partner restaurants' would-be customers to DoorDash's Partner Restaurants" for financial gain).

Finally, Ninestar's suggestion that Amazon has a "seller violation" reporting process, *see* Mem. at 4, 15 & Request for Judicial Notice, has no bearing on whether Plaintiff states a claim for false advertising. *See*, *e.g.*, *Vitamins Online*, 2020 WL 6581050, *12 ("block voting" on review "helpfulness" that amounted to falsity also "was in violation of Amazon's policies."); *Interlink*, 2016 WL 1260713, *8 (plaintiff adequately alleged Lanham Act false statement even where defendant argued "actual complaint is with Amazon's product review reporting process").[12] The Court may reasonably infer that Amazon's seller code of conduct exists for the protection of fair competition on the platform. *See* Compl. ¶¶ 196-200 (identifying "unfair activities" including "[m]anipulating sales rank"). This does not, however, mean that ML Products' "fundamental gripe," Mem. at 14, is not Ninestar's violation of the *laws* as asserted in the Complaint.

## II.   ML Products Adequately Pleads Injury Proximately Caused by Ninestar.

In *Lexmark International Inc., v. Static Control Components Inc.*, 572 U.S. 118, 140 (2014), the Supreme Court resolved a circuit split of varying tests for standing and proximate injury under the Lanham Act, holding that a plaintiff must plead an injury "to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." A consumer who is misled into purchasing a product generally is not considered to be within the Lanham Act's "zone of interest," 572 U.S. at 132, but where a person's "position in the marketplace has been damaged by [the defendant's] false advertising … [t]here is no doubt that it is within the zone of interests protected by the statute." *Id.* at 137.

To satisfy the proximate cause component of the inquiry, "a plaintiff suing under § 1125(a) ordinarily must show that its economic or reputational injury flows directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133. The "intervening step of consumer deception is not fatal" to this

---

[12] As noted in Plaintiff's Response to RJN, the Court may take judicial notice that an Amazon website page exists, but the Court may not notice the content thereof for the truth of the matter asserted. *Farrell v. Boeing Employees Credit Union*, 761 Fed.Appx. 682, 685 (9th Cir. 2019); *see also Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1029 (C.D. Cal. 2015) ("[I]nformation appearing on [] third party websites is not a proper subject of judicial notice because it is not capable of accurate and ready determination.").

showing. *Id.* Indeed, "[d]iversion of sales to a direct competitor" is considered "the paradigmatic direct injury from false advertising." *Id.* at 138.

ML Products easily meets the pleading threshold. ML Products and Ninestar are direct competitors for third-party ink and toner sales, thus placing Plaintiff squarely within the Lanham Act's "zone of interests." Compl. ¶ 1 (ML Products and Defendants "compete for those sales" on Amazon); *see also id.* at ¶¶ 2, 7, 8, 74-75, 91, 203; Mem. at 3 (acknowledging). When a competitor influences consumers to purchase its products instead of the plaintiff's by making false statements about either its own products or its competitors' products, it is a "classic Lanham Act false advertising claim." *See Lexmark*, 572 U.S. at 137. ML Products alleges precisely the manner in which Ninestar's false statements "diver[t]" sales to it. Those falsities "artificially elevate [Ninestar's] listings to higher priority positions in the organic search results … and thus garner greater sales while at the same time bumping down their competitors' products and thus decreasing their competitors' sales." Compl. ¶ 3; *see also id.* at ¶¶ 2 (most shoppers do not look beyond limited first-page results); ¶¶ 176-192 *generally*. ML Products alleges that it has suffered lost sales as a result of Ninestar's false statements. *Id.* ¶¶ 91, 203-210.

These allegations are sufficient to satisfy proximate cause even where the false statements relate only to Defendants' products. *See ThermoLife Int'l, LLC v. Compound Sols., Inc.,* 848 F. App'x 706, 709 (9th Cir. 2021) (complaint satisfied proximate cause requirement where products directly compete, because "potential customers were deceived" by defendant's false advertising of its own product); *Scilex Pharmaceuticals Inc. v. Sanofi-Aventis U.S. LLC*, 552 F.Supp.3d 901, 914 (N.D. Cal. 2021) (plaintiff adequately pleaded Lanham Act proximate cause where it alleged that parties were competitors that "compete for the same customer segments" and defendants' allegedly false advertising about defendants' own products caused consumers "to withhold trade from the plaintiff," even if this was not the only cause of lost sales).[13] *See also Trafficschool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826 (9th Cir. 2011) (courts "generally presume[] commercial injury when defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead consumers."). Finally, as noted in Point I.A., above, numerous Lanham Act cases alleging Amazon review manipulation have survived

---

[13] Ninestar cites *ThermoLife Int'l LLC v. Sparta Nutrition LLC*, No. CV-19-01715, 2020 WL 248164 (D. Ariz. Jan. 16, 2020). Mem. at 16. Unlike here, and as the *Scilex* court noted, 552 F.Supp.3d at 914, the parties in that case were not direct competitors. 2020 WL 248164, *9.

Rule 12 challenges. Because ML Products alleges that it is a direct competitor of Defendants and that false statements by Defendants created an Amazon feedback loop that diverted sales from it to Defendants, ML Products, too, adequately alleges proximate cause.

### III.   ML Products Sufficiently Pleads its California UCL and FAL Claims.

#### A.   Competitor Standing Does Not Require Direct Reliance, Only Injury in Fact, Which ML Products Sufficiently Pleads.

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice[.]" Cal. Bus. & Prof. Code § 17200. The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500. Ninestar argues that ML Products lacks standing to bring an action under the UCL and FAL because, it says, ML Products must allege its own direct and actual reliance on Ninestar's misrepresentations. Mem. at 17-19. According to Ninestar, "the California Supreme Court has held that the amended UCL imposes an actual reliance requirement on plaintiffs who bring a UCL action based on a fraud theory involving false advertising[,]" but it does not cite a California Supreme Court decision for this proposition.[14] Instead, it cites *L.A. Taxi Coop., Inc. v. Uber Techs. Inc.*, 114 F.Supp.3d 852 (N.D. Cal. 2015). *L.A. Taxi Coop.* cites to *Heartland Payment Sys., Inc. v. Mercury Payment Sys. LLC*, No. 14-cv-0437, 2015 WL3377662, *6 (N.D. Cal. Feb. 24, 2015), which finally, quotes the California Supreme Court, but it quotes a UCL action in which a *consumer* plaintiff asserting a fraud-based claim was required to plead his own reliance. *Id.*, quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 326-328, 207 P.3d 20, 39-40 & n.17 (2009). Unlike Ninestar, the *Heartland Payment* court acknowledged that, in fact, "[n]o California court has addressed" whether "*competitor* plaintiffs must plead their own reliance, or whether pleading consumer reliance is sufficient for fraudulent business practices claims brought by competitors." *Heartland Payment*, 2015 WL3377662, at *7 (emphasis added). *See also A White & Yellow Cab Inc. v. Uber Techs., Inc.*, No. 15-CV-05163, 2017 WL 1208384, at *8 (N.D. Cal. Mar. 31, 2017) (cited by Ninestar, acknowledging "there is a split among district courts sitting in California" on the issue of reliance when it deals with direct competitors).

---

[14] The "amended UCL" refers to the post- Proposition 64 statute. "The intent of [Proposition 64] was to 'prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact under the standing requirements of the United States Constitution.'" *Allergan, Inc. v. Athena Cosmetics, Inc.*, 640 F.3d 1377 (9th Cir. 2011) (quoting Cal. Prop. 64 § 1(e).

-19-

While it makes sense that a consumer plaintiff asserting a fraud-based claim would be required to plead reliance, the same does not follow in a case like this one, which is brought by a competitor. The California Supreme Court has made clear that the purpose of the UCL "is to protect both consumers *and competitors* by promoting fair competition." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 320, 246 P.3d 877, 883 (2011) (emphasis added). *Kwikset* further informs that Proposition 64's purpose was to clarify an injury in fact requirement, and injury in fact can be shown where a plaintiff has lost sales or income because of a defendant's misdeeds. *See id.* at 325 ("If a party has alleged or proven a personal, individualized loss of money or property in any nontrivial amount, he or she has also alleged or proven injury in fact.").

Implying a "first-party" reliance requirement in a competitor case, as Ninestar advocates, would both frustrate the purpose of the UCL and go beyond the stated purpose of Proposition 64. Competitors, after all, are also injured by unfair competition—even when they do not themselves purchase a defendant's product. Ninestar's argument would effectively preclude any such competitor UCL/FAL claim unless the competitors had some prior dealings together. The Ninth Circuit, however, has observed that California Supreme Court decisions make clear that UCL standing does not in any way hinge on a prior "business dealings requirement." *Allergan*, 640 F.3d at 1381, citing *Kwikset* and *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758 (2010) (reversing district court, competitor plaintiff had UCL standing in action alleging lost sales due, *inter alia*, to defendants' "violation of state and federal misbranding laws").

This Court should decline Ninestar's invitation to read a "business dealings requirement" into UCL standing and, absent a California Supreme Court or Ninth Circuit directive otherwise, follow better-reasoned cases which have not imposed a "first-party" reliance requirement on competitor standing. *See VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, 673 F. Supp. 2d 1073, 1086 (E.D. Cal. 2009) (finding that "Plaintiff [direct competitor] has been injured by consumer reliance upon Defendant's misrepresentations which have resulted in competitive harm and diverted sales."); *Obesity Research Inst. LLC v. Fiber Research Int'l, LLC*, 165 F. Supp. 3d 937, 948 (S.D. Cal. 2016) ("There is no requirement that there be allegations of business dealings between parties."). Because ML Products

is a direct competitor of Ninestar and has suffered injury in fact, it meets UCL and FAL standing requirements.[15]

### B.   ML Products States a Claim Under the UCL's Unlawful Prong

To state a UCL claim based on an "unlawful" business act or practice, a plaintiff needs only allege violations of some underlying law. *Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008), citing *Saunders v. Superior Ct.*, 27 Cal.App.4th 832, 838–39, 33 Cal.Rptr.2d 438 (1994) ("Violation of almost any federal, state, or local law may serve as the basis for a UCL claim").

The Complaint satisfies this requirement. ML Products alleges that "defendants' false and misleading statements of fact and misrepresentations of fact concerning its products were made, and continue to be made, in commercial advertising, promotions, and direct communications with consumers on their Amazon.com online sales platform in a manner material to the public's decision to purchase Defendants' products instead of those of their competitors, including Plaintiff. … [These statements] are false and misleading in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)." Compl. ¶ 215. *See also id.* ¶¶ 235-242 (FAL violations). Stating a valid claim under the Lanham Act and the FAL for misrepresentations of fact satisfies the unlawful prong of the UCL; *see also Cisco Sys., Inc. v. Beccela's Etc., LLC*, 403 F. Supp. 3d 813, 830 (N.D. Cal. 2019) ("Defendants state a valid claim under the Lanham Act for Cisco's alleged misrepresentations. This alleged violation satisfies both the UCL's unlawful and fraudulent prongs.").

### C.   ML Products States a Claim Under the UCL's Unfair Prong

The UCL prohibits business practices that constitute "unfair competition," and the FAL's prohibition against unfair advertising is expressly incorporated therein as a form of unfair competition. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013). "The statutory language referring to 'any unlawful, unfair *or* fraudulent' practice … makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999) (emphasis in orig.). This makes sense when "a major purpose" of the UCL is "the preservation of fair business competition." *Id.* (quotation, citation omitted).

---

[15] If the Court decides that competitor claims under the UCL's fraudulent and unlawful prongs require direct reliance, this still does not affect ML Products' adequately pled claim under the UCL's unfair prong as discussed in Point III.C. below.

Ninestar nonetheless argues (Mem. at 20) that unfair prong claims that overlap with claims under the other prongs cannot stand alone, citing *Hadley v. Kellogg Sales Co.*, 243 F.Supp.3d 1074 (N.D. Cal. 2017) and *Johnson v. Ocwen Loan Servicing, LLC*, No. EDCV 17-01373, 2017 WL 10581088 (C.D. Cal. Dec. 11, 2017), aff'd, 744 F. App'x 418 (9th Cir. 2018). But these are cases brought by *consumers* rather than *competitors*. *Hadley* specifically acknowledged that the test for *consumer* unfair prong claims differed from the *competitor* test set out in *Cel-Tech*. *Hadley*, 243 F.Supp.3d at 1104. Only after surveying the "unsettled" landscape of consumer tests did the *Hadley* court then indicate that "[r]egardless of the test," unfair prong claims that "overlap entirely" with claims under the other prongs cannot survive if the other claims do not survive. *See id.* at 1104-05.[16] *Hadley* did not apply this standard to a competitor case and to the extent the language in the opinion seemed to do so, it is *dicta*. There is no question that unfair prong claims may stand alone. *Cf. Watson Labs., Inc. v. Rhone-Poulenc Rover, Inc.*, 178 F.Supp.2d 1099, 1117-19 (C.D. Cal. 2001) (noting that court previously permitted competitor unfair prong claim to proceed even where plaintiff "does not assert" unlawful or fraudulent prong claims); *Sun Microsystems, Inc. v. Microsoft Corp.*, 87 F.Supp.2d 992, 999-1000 (N.D. Cal. 2000) (competitor unfair prong proceeded even without showing of "fraudulent business practice" or violation of "specific statutory proscription").

In any event, ML Products has alleged Ninestar's harm to competition generally in a way that does not "overlap entirely" with its other claims. Whatever the status of the consumer unfair prong test, this is consistent with the test for *competitors*: "unfair" conduct is "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech*, 20 Cal.4th at 187. First, it is clear that Plaintiff needs not allege an actual violation of the Sherman Act or any other law to satisfy this standard, as *Cel-Tech* itself confirms. 20 Cal.4th at 180. Conduct that violates the policy or spirit of the antitrust laws or that significantly threatens or harms competition suffices. As to that "policy or spirit," the nation's antitrust laws are

---

[16] The cases cited in *Hadley* for this proposition are also consumer, rather than competitor, cases. *See Punian v. Gillette Co.*, No. 14-cv-05028, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016); *In re Actimmune Mktg. Litig.*, No. C 08-02376, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009), aff'd 464 Fed.App'x. 651 (9th Cir. 2011). As noted, *Johnson v. Ocwen*, which Ninestar also offers for this proposition, is a consumer case. *Johnson* itself cites only another consumer case, *Sue Shin v. Campbell Soup Co.*, No. CV 17-1082, 2017 WL 3534991, *7 (C.D. Cal. Aug. 9, 2017), which quotes *Hadley* and cites *Punian*.

designed to guard, in part, against the use of market power to block competition or gain unfair competitive advantage. *See*, *e.g.*, *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). As alleged, Ninestar's conduct allows it to exert increasing dominance over third-party ink and toner sales on Amazon, capturing a larger and larger proportion of those sales based on a "feedback loop" that elevates its own product listings and relegates the listings of others. Ninestar unfairly leverages this in a way that both violates the policy or spirit of the antitrust laws and also threatens or harms competition generally, preventing honest competitors from succeeding in the market. Compl. at, *e.g.*, ¶¶ 36 (conduct results in "unfair advantages over honest sellers"); 74 (straw-seller conduct provides "unfair advantage to Ninestar at the expense of honest sellers like Plaintiff."); 196-201 (Amazon seller rules designed to "secure a fair playing field for honest competition"). *See also id.* at ¶¶ 206-209. ML Products further alleges that the FTC considers the use of false reviews to be "unfair" and harmful to competition. Compl. ¶¶ 194-195, 202 (recounting FTC actions and warnings concerning false product reviews). This is consistent with consideration of "administrative guidelines developed by the [FTC]" in making "nuanced and qualitative" judgments about business practices under the UCL unfair prong. *Nationwide Biweekly Admin., Inc. v. Superior Court*, 9 Cal. 5th 279, 304 (2020). Plaintiff states an unfair prong claim.

### D. ML Products May Seek Disgorgement and There is No Basis to "Dismiss" or "Strike" Its Claims or Allegations.

The UCL allows the court to make "orders or judgments… as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition… or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203. ML Products seeks injunctive relief to prevent future violations of the UCL and FAL as well as a disgorgement of profits "to perform a full restitution to Plaintiff as a consequence of Defendants' deceptive, untrue, and misleading advertising." Compl. ¶¶ 233, 234, 240, 241. These forms of relief are available under the UCL and FAL.

While injunctive relief is "'the primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction,'" *McGill v. Citibank, N.A.*, 2 Cal.5th 945,

954 (2017), quoting *In re Tobacco II Cases*, 46 Cal. 4th at 319, restitutionary relief "serves two purposes — returning to the plaintiff monies in which he or she has an interest and deterring the offender from future violations." *Colgan v. Leatherman Tool Grp., Inc*., 135 Cal. App. 4th 663, 695, (2006), as modified on denial of reh'g (Jan. 31, 2006). The Ninth Circuit has explained "[r]estitution in the UCL context, [] includes restoring money or property that was not necessarily in the plaintiff's possession." *Lozano v. AT & T Wireless Services, Inc.*, 504 F.3d 718, 733 (9th Cir. 2007).  It acknowledges that "[t]he California Supreme Court has stated that the concept of restoration or restitution, as used in the UCL, is not limited only to the return of money or property that was once in the possession of that person. Instead, restitution is broad enough to allow a plaintiff to recover money or property in which he or she has a vested interest." *Id*., citing *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal.4th 1134, 1149 (2003). ML Products seeks restitution in the form of disgorgement: "Defendants have wrongfully taken Plaintiff's profits and his substantial investment of time, energy, and money" therefore "Defendants should [] disgorge all profits from the above conduct and further should be ordered to perform full restitution." Compl. ¶¶ 234, 241. This is an available remedy.

Even if the Court were to determine that one or more of the remedies ML Products seeks are unavailable under the law,[17] Ninestar provides no authority holding—or even suggesting—that this is an appropriate basis on which to *dismiss a claim. See Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("as a general rule, requesting incorrect relief is not grounds for dismissal."). As there is, in any event, no dispute that Plaintiff may seek restitution under the UCL and FAL, Ninestar's request to strike the entirety of Complaint Paragraphs 234 and 241 is overbroad and unnecessary.

**IV.    The Court Should Allow Plaintiff Leave to Amend to Cure any Deficiencies.**

If the Court judges any aspect of Plaintiff's Complaint deficient, Plaintiff respectfully requests leave to amend to cure defect(s) and/or supplement the allegations. *Foman v. Davis*, 371 U.S. 178 (1962); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

---

[17] There is no dispute that disgorgement of a defendant's profits is an appropriate remedy under the Lanham Act. 15 U.S.C. § 1117(a). *See* Compl. ¶ 224.

**<u>CONCLUSION</u>**

For the forgoing reasons, the Court should deny Defendant Ninestar Technology Co. Ltd.'s Motion to Dismiss in its entirety or, in the alternative, grant leave for a reasonable time to amend to reflect the Court's Order.

Dated: April 14, 2022

Respectfully submitted,


By: */s/ Derek Y. Brandt*
<u>　　　　　　　　　　　　　</u>

Derek Y. Brandt (*Pro Hac Vice*)
DYB@mccunewright.com
Leigh M. Perica (*Pro Hac Vice*)
LMP@mccunewright.com
Connor P. Lemire (*Pro Hac Vice*)
CPL@mccunewright.com
**MᴄCᴜɴᴇ Wʀɪɢʜᴛ Aʀᴇᴠᴀʟᴏ, ʟʟᴘ**
231 North Main Street, Suite 20
Edwardsville, IL 62025
Telephone: (618) 307-6116

Richard D. McCune (State Bar No. 132124)
RDM@mccunewright.com
**MᴄCᴜɴᴇ Wʀɪɢʜᴛ Aʀᴇᴠᴀʟᴏ, ʟʟᴘ**
18565 Jamboree Road, Suite 550
Irvine, California 92612
Telephone: (909) 557-1250

Dana R. Vogel (*Pro Hac Vice*)
DRV@mccunewright.com
**MᴄCᴜɴᴇ Wʀɪɢʜᴛ Aʀᴇᴠᴀʟᴏ, ʟʟᴘ**
4802 East Ray Road, Suite 23-403
Phoenix, AZ 85044
Telephone: 909-557-1250

***Attorneys for Plaintiff ML Products Inc.***

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2022, I electronically filed the foregoing Plaintiff's Memorandum of Points & Authorities in Opposition to Defendant Ninestar Technology Co. Ltd.'s Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this action.


By: */s/ Derek Y. Brandt*
Derek Y. Brandt